IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARLLY SALGUERO<br>5012 Huron Street<br>College Park, Maryland 20740<br><br>   *Plaintiff,*<br><br>   v.<br><br>PAULA'S ORGANIC CLEANING SERVICES LLC<br>6515 Windham Avenue<br>Alexandria, Virginia 22315<br><br>Serve: PAULA DOSSANTOS<br>       Resident Agent<br>       6515 Windham Avenue<br>       Alexandria, Virginia 22315<br><br>PAULA DOSSANTOS<br>6515 Windham Avenue<br>Alexandria, Virginia 22315<br><br>   *Defendants*. | Case No.: 22-168 |

**COMPLAINT**

Plaintiff, Marlly Salguero ("Plaintiff"), by her undersigned counsel, Melehy & Associates LLC, hereby brings suit against Paula's Organic Cleaning Services LLC ("POCS") and Paula Dossantos ("Dossantos"), for violations of the District of Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1001 *et. seq.* ("DCMWRA") and the District of Columbia Payment and Collection of Wages Act, D.C. Code §§ 32-1301, *et seq.* ("DCPCWL"). Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff is an adult resident of the State of Maryland and was employed by Defendants from July 21, 2021 to December 16, 2021. During that time-frame, Plaintiff performed household cleaning functions for residences in the District of Columbia, Maryland and Virginia. However, Plaintiff spent more than half of her working time on residences located in the District of Columbia.

2. POCS is organized under the laws of the Commonwealth of Virginia. During the relevant period, POCS employed Plaintiff within the meaning of the DCMWRA and the DCPCWL because it treated her as an employee, maintained her employment records, paid her wages, supervised her, determined her pay, hired her, had the authority to terminate her employment and made the decision to pay her in a manner made unlawful by the DCMWRA and the DCPCWL.

3. Dossantos is a Member, Director, and owner of POCS. She is an employer of Plaintiff within the meaning of the DCMWRA and the DCWPCL because: (1) she is an owner, manager and member of POCS, (2) she has operational control over POCS and is significantly involved in the operations; (3) she controlled the terms and conditions of Plaintiff's employment, including her work schedule, her compensation and pay and she did in fact set the terms and conditions of Plaintiff's employment; and (4) she had the authority to hire and fire Plaintiff (and she did so); (5) she supervised Plaintiff regarding her duties; (6) she has actual and functional control over POCS's corporate funds, which are used to pay POCS employees, including Plaintiff, and she has the authority to allocate funds as profits in the manner she chooses; (6) she had authority to set Plaintiff's rates and manner of pay and authorized payment of Plaintiff's wages; (7) she had knowledge of and approved of the unlawful manner in which Plaintiff was paid (failing to pay for some work hours, failing to pay minimum wage and failing to pay an overtime premium

for overtime hours); (8) she established pay practices and formulated and approved pay policies that caused the violations at issue in this case; and (9) she personally maintained the Plaintiff's employment records in the corporate office of POCS, which was located in her home.

## JURISDICTION

4.  Plaintiff is asserting causes of action against Defendants for unpaid hours of work, unpaid overtime wages and unpaid minimum wages, which arise under the DCMWRA and the DCPCWL, which are District of Columbia laws.

## PERSONAL JURISDICTION OVER DEFENDANTS

5.  This Court has *in personam* jurisdiction over Defendants under the District of Columbia Long Arm Statute, D.C. Code § 13-423 (a).

6.  The Court has personal jurisdiction over POCS because, directly and through its agents, it transacted business in the District of Columbia by contracting with District of Columbia residents to provide cleaning services in their homes and Plaintiff's claims arise from Defendants' contacts with the District of Columbia because Defendants sent Plaintiff to work in the District of Columbia, they were obligated to follow District of Columbia law and they violated Plaintiff's rights under the DCMWRA and the DCPCWL.

7.  The Court also has personal jurisdiction over Dossantos because, directly and through her agents, she transacted business in the District of Columbia by contracting with District of Columbia residents to provide cleaning services in their homes, directing her agents, servants and employees to travel into the District of Columbia and clean homes there. In addition, Plaintiff's claims arose from POCS's contacts with the District as Dossantos (an agent of POCS), personally entered the District of Columbia for matters directly related to POCS's business. Dossantos also sent Plaintiff (and other cleaning personnel as well as lower-level managers of POCS) to work in

the District of Columbia. When she did so, she violated Plaintiff's rights under the DCMWRA and the DCPCWL.

## STATEMENT OF FACTS

8. POCS employs six crews of residential cleaning personnel, each of which is comprised of three workers. Plaintiff is a member of one of the crews.

9. From July 21, 2021, to December 16, 2021, Plaintiff was employed by Defendants in the District of Columbia within the meaning of D.C. Code § 32-1003 (b), because during that time frame, Plaintiff spent more than 50% of her working time in the District of Columbia and therefore, "regularly spent more than 50% of her working time in the District of Columbia." *Id*. Thus, she is a covered employee under the DCMWRA and the DCPCWL and Defendants were subject to those laws.

10. When Plaintiff began working for Defendants on July 21, 2021, her hourly wage was $13.50 per hour. On or about August 30, 2021, Defendants began paying the Plaintiff $14.50 per hour.

11. Defendants provided Plaintiff with a company automobile, which Plaintiff used to commute back and forth from her home to the various private residences where she performed cleaning services and then from the last residence of the day to the homes of her two co-workers to drop them off. At all relevant times, Plaintiff worked with a three-person crew that consisted of herself and two other employees of Defendants. Dossantos and a manager, Sandra Herrera, instructed the Plaintiff that she was required to transport her two co-workers from their homes to the various residential cleaning sites and then from the last job site of the day back to their homes. Plaintiff's travel time from her home to the first job site and from the last job site to her home was compensable working time because she performed employer-directed work during her travel to

and from work locations: transportation of her two co-workers to various residential residences to perform cleaning services and then to their homes at the conclusion of the workday. *See* 29 C.F.R. § 785.34.

12. During the time Plaintiff was employed by Defendants, she regularly worked Monday through Friday. However, on 3-4 occasions in November and December 2021, in addition to working Monday through Friday, Plaintiff performed cleaning services on 3-4 separate Saturdays.

13. On Mondays, Plaintiff would typically leave her home at 5:45 a.m., pick up her two co-workers and proceed to the first residence of the day. She would typically arrive at the first residence at about 7:00 a.m. On Mondays, Plaintiff's crew would typically finish the last residence at between 2:30 p.m. and 3:30 p.m. Plaintiff would then transport her two co-workers to their homes and then drive home. Plaintiff did not take a lunch break and she would typically arrive at home between 60 and 90 minutes after leaving the last residence (between 3:30 p.m. and 5:00 p.m.), due to the distance she needed to travel and the fact that she returned during rush hour when traffic was heavy. Generally, on Mondays, Plaintiff's average workday was about 10.5 hours.

14. From Tuesday through Friday, Plaintiff typically left home to pick up her two co-workers at about 6:45 a.m. and she would typically arrive at the first house at about 8:00 a.m. During these workdays, Plaintiff and her crew would typically finish work at the last residence of the day between 4:30 and 5:30 p.m. Plaintiff would typically arrive at home between 60 to 90 minutes after leaving the last residence of the day (generally between 5:30 p.m. and 7:00 p.m.). So, from Tuesday through Friday, the average length of Plaintiff's workday was about 11.5 hours.

15. On the 3-4 Saturdays when Plaintiff and her crew performed work for Defendants Plaintiff would also transport her crew members to and from their homes. On those 3-4 Saturdays,

Plaintiff's workday typically began at approximately 7:00 a.m. She arrived at her first house at 8:00 a.m. She would finish last job on Saturdays at about 3:30 to 4:00 p.m. Once finished at 4:30 p.m. She typically arrived at home at between 5:00 and 5:30 p.m. The average length of her workday during these Saturdays was 10.25 hours.

16.     Plaintiff did not have a lunch break, as she generally ate lunch while traveling between cleaning sites.

17.     When Plaintiff did not work on a Saturday, the average length of her workweek was 57.75 hours. During the 3-4 Saturdays when Plaintiff performed work for Defendants, the average length of Plaintiff's workweek was 68 hours.

18.     Defendants violated the DCMWRA and the DCPCWL in several ways. They never paid Plaintiff an overtime premium for overtime hours. Defendants also failed to pay Plaintiff anything at all for her compensable travel time or for her last week of work (a wage of $463) and they failed to pay Plaintiff the applicable minimum wage of $15.20 per hour.

19.     Thus, for the period of from July 21, 2021 to December 17, 2021, Plaintiff is entitled to her unpaid minimum wages, her unpaid straight time wages and her unpaid overtime wages plus an equivalent amount equal to three times his unpaid overtime wages as liquidated damages pursuant to D.C. Code §§ 32-1012 (b)(1), along with attorney's fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

20.     Plaintiff's total damages, including the unpaid wages liquidated damages significantly exceed the small claims court jurisdictional limit of $10,000.

## COUNT I
## VIOLATIONS OF THE DCMWRA
**(Defendants)**

21. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

22. At all times relevant to the Complaint, Plaintiff was an "employee" of Defendants within the meaning of D.C. Code § 32-1002 (2).

23. At all times relevant to the Complaint, Defendants were "employers" of Plaintiff within the meaning of D.C. Code § 32-1002 (3).

24. Defendants violated the DCMWRA by failing to pay Plaintiff an overtime premium for her overtime hours, failing to pay her the minimum wage of $15.20 per hour and failing to pay her anything at all for some of her compensable work hours, including compensable travel time and payment for her last week of work.

25. As a result of the violations of the DCMWRA by Defendants, they are liable for Plaintiff's unpaid wages, liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

26. The precise amount owed to the Plaintiff by Defendants cannot be calculated because Plaintiff and his counsel do not possess all of his time and payroll records, which are in possession of Defendants.

## COUNT II
## VIOLATIONS OF THE DCPCWL
## (Only Defendants)

27. Plaintiff re-alleges and incorporate the allegations contained in the paragraphs above.

28. At all times relevant to the Complaint, Plaintiff were "employees" of Defendants within the meaning of D.C. Code § 32-1301 (2).

29. At all times relevant to the Complaint, Defendants were "employers" of Plaintiff within the meaning of D.C. Code § 32-1301 (1B).

30. Defendants violated the DCPCWL by failing to pay Plaintiff anything at all for many of her hours of work, including compensable travel time and for her last week of work.

31. As a result of the violations of the DCPCWL by Defendants, they are liable for Plaintiff's unpaid wages, liquidated damages equal to three times the unpaid overtime and straight-time wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

32. The precise amount owed to the Plaintiff by Defendants cannot be calculated because Plaintiff and her counsel do not possess her payroll records or her time records, which are in possession of Defendants.

**RELIEF REQUESTED**

Plaintiff requests the following relief which is in excess of the small claims court jurisdictional limit of $10,000:

A.  enter a judgment against all Defendants, jointly and severally, and in favor of Plaintiff, based on his violations of the DCMWRA and the DCPCWL, in the amount of Plaintiff's unpaid and illegally withheld wages, plus an amount equal to three times the amount of unpaid wages as liquidated damages;

B.  enter judgment against all Defendants, jointly and severally, and in favor of Plaintiff for his litigation costs and attorney's fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

Respectfully submitted,

/s/ Omar Vincent Melehy
Omar Vincent Melehy, Esq.
DC Bar No.: 415849
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
ovmelehy@melehylaw.com
Phone:  (301) 587-6364
Fax:    (301) 587-6308
*Attorneys for Plaintiff*